When the Clark County Public Defenders were appointed to Mr. Howard's murder case, the first attorney to speak for the office at the hearing was Terrence Jackson, and he announced at the very outset that the victim had been his dentist for 15 years and that his parents both knew the victim well. Six weeks later, a lawyer from the same office stated, again in open court and again in Mr. Howard's presence, that another attorney from their office had expressed his hope that our client be executed. As a result of those disclosures, Mr. Howard understandably had no confidence in his counsel. The trial court denied repeated, timely requests for the substitution of counsel while making essentially no inquiry into the conflict. That was a clear violation of the Sixth Amendment in light of Ninth Circuit case law under the applicable pre-ed plan standards. You know, counsel, when you say no inquiry into the conflict, didn't the trial judge, or am I misremembering this, confirm that the two lawyers who you mentioned had done no work on the case since the first one was removed? And then the second one, as I understand it, was never on the case. Didn't the trial judge make that finding? Yes, Your Honor, the trial judge certainly made some findings about counsel's preparation and primarily their lack of preparation and their inadequacy and their incompetence. No, my question went to the two people you mentioned. Didn't the trial judge make a finding that they didn't work on the case after a certain point? Yes, Your Honor. Well, the trial court at least ordered that they not involve themselves in the case and confirmed with trial counsel that those two individuals, Mr. Jackson and Mr. Gibson, had not participated in the case. There are a couple of problems with that. One is that there was no inquiry. An inquiry is a set of questions designed to explore the conflict and what's causing the conflict. And this court explained in the Brown decision that a primary purpose of the inquiry is to quote, ease the distrust of the defendant. And that certainly was never done by this trial court. And one way of understanding that is to see that this is not a conflict of interest case. If it were, it would maybe make sense to say these two individual attorneys have been isolated from the case. But this is a constructive denial of counsel case, so the question really is the relationship between the defendant and the attorneys who are representing him and his trust and confidence in them. And Mr. Howard was very clear throughout these proceedings, and his attorneys were very clear, that he had no trust and confidence and those misgivings would not have been addressed by the findings that Your Honor referred to, partly because Mr. Jackson was the supervisor of the trial attorneys who took this case to the jury. And so any reasonable defendant would have serious concerns about the fact that the attorneys representing him after trial are going to be reporting back to that same person who was close by his own admission. What would you think, Your Honor? What do you do, though, about the, I take it as a finding, but tell me if you disagree, that by the state courts, that your client essentially was trying to be manipulative and really was not, didn't have the kind of genuine concern that you were talking about. And one of the items of evidence that the state would point to would be that at one point he did seem to develop a relationship with another lawyer, one of the public defenders in the office, and if his opposition or if his concerns were as categorical as you just described, there wouldn't have been that interlude where he felt comfortable and then actually asked for this person to remain as a state lawyer. How about your response to that? Yes, Your Honor, I just brought that up because I do think it's an important aspect of the case to address. First, responding to the question as to whether that was a finding or not, I don't believe it was a finding by any state court that Mr. Howard had a good relationship at any point in time with any of his attorneys. That is an inference that opposing counsel is drawing from the transcript, but it was never a fact that any court found, whether the state courts were or not, that's what I'm saying. As for the substance of that exchange, what the state is really overlooking in its argument is what immediately followed Mr. Howard's very brief, positive comments about Mr. Cooper, the attorney in question, and what happened was court broke. Mr. Howard conferred with counsel, and as soon as they returned to court, Mr. Howard said, or rather his attorneys said, Mr. Howard continues to believe that he should have other counsel, and that's on page 1376 of the excerpt, and so at most this statement by Mr. Howard represented a momentary willingness to entertain the possibility of trying to restore relations with trial counsel, and he made that effort, and it failed. In every subsequent statement, every prior statement is consistent with the proposition that there was no relationship between Mr. Howard and his attorneys, that there was no The Nevada Supreme Court said Howard's claims do not objectively justify Howard's distrust of his attorney, and the district court said the record shows that the refusal to cooperate with counsel was unreasonable. Howard's claim that he was constructively denied assistance of counsel, therefore, must fail, so both of those statements are entitled to no deference at all, and in your view, and if we were looking at them de novo, we would just have to find that both the Nevada Supreme Court and the district court were wrong. I would assert, Your Honor, that those statements by those two respective courts are entitled to no deference for a couple of reasons, one of which is this is a PREEPA case, so the usual HIPAA standards don't apply. Another is that statement by the Nevada Supreme Court is really, in my view, a legal determination. It's a justification for why Mr. Howard's constructive denial of counsel claim failed, and it's the ultimate question, and so it's a mixed binding of law and fact, and that is entitled to no deference. In terms of the federal district court, the law and its statements, I think those are always reviewed de novo, because there was no evidentiary hearing below. Is that right, though? I think, usually, if there's a question of fact, even if it's a written record, we review for clear error under Hinkson. That may be correct, Your Honor, and I apologize if I misstated the rule. I haven't looked into that particular question. Even if it is reviewed for clear error, well, first of all, it is clearly erroneous to the extent that the federal district court was suggesting that Mr. Howard did not have a genuine distrust and lack of faith in his counsel. That is clearly erroneous, because every statement by every concerned party attests to that broken relationship, including the statement made less than an hour after the single positive remark that Judge Watford referenced earlier. The one I was struggling with is the district court, the federal district court said that the conflict was of Howard's own making, and that seems like a factual statement, and if we have to review it for clear error, I guess I'm struggling with how we could say it's clear error. I think you have a much stronger case if we do get to de novo review, but I'm not sure how we do on the district court's fact findings. Well, I think that the district court's reasoning is just problematic, and I don't know what is clear error, but it's a chain of inferences that just doesn't make sense and is not supported by the record, because the federal district court's view was that Mr. Howard's implication of his speedy trial right was somehow inconsistent with his protestations about counsel, and that is not the inquiry that's required by this court's constructive denial cases. The analysis considers whether a defendant's distrust in counsel is reasonable, and legitimate is the word that the court used in the Daniels decision, but there's no obligation to show that every single position taken by a defendant was reasonable, and if there were, it would lead to very troubling results, because numerous defendants have very unrealistic expectations about when their cases will go to trial, for example, and that doesn't deprive them of Sixth Amendment rights that they otherwise enjoy, and I would also note that there are many cases in which this court has granted relief on constructive denial claims where motions to substitute were filed quite late in the day, far later in the day than Mr. Howard filed his, and in those circumstances, the court asks what kind of effect would a defendant have on the trial court's calendar? Counsel, you were referring before, maybe, to a transitory comment by your client. I'm not sure if what I'm about to quote is that, but at ER 782, where your client was asked, did you fully cooperate with your attorneys during trial? Yes, at some points, and no, at some points, simply because of the distrust I had, but I tried to, so whether that was the transitory comment to which you referred, or should we just ignore that in looking at what the determinations made by the District Court and the Nevada Supreme Court and the trial court were? Yes, Your Honor, that's not the comment I was referring to. I believe the comment that you quoted is from the post-conviction evidence. Yes. Yeah. That's not the comment I was referring to. What's contemporaneous with pretrial proceedings, the post-conviction testimony from Mr. Howard, certainly, there's an argument to be made that it should not be considered because the testimony became complete at the time of trial. It was raised on direct appeal, addressed on direct appeal, so that there is a theory under which you could exclude the post-conviction record, but in my view, it doesn't matter whether you take it into account because Mr. Howard's testimony, first, at most, suggested that he was trying to cooperate with counsel. It does not suggest that there was a functioning relationship, and secondly, it was effectively discredited by the state post-conviction court, which found that Mr. Howard, quote, impeded the efforts of his attorneys, that he refused to sign releases that they needed to obtain documents, and those findings are entitled to deference, and those findings are correct. They are consistent with what trial counsel themselves testified to at the post-conviction hearing, and they're consistent with all of the statements at the time. Those findings are entitled to deference, but not the findings that these were problems of your client's own making. Yes, Your Honor, because those are straightforward factual findings. Was he cooperative or not? Was he signing releases or not? And the answer to those questions was no, by every court that's ever considered the question. The issue about whether Mr. Howard himself created the problem is not a straightforward factual finding. It is a logical conclusion reached by the federal district court based on reasoning that is unpersuasive, and not only is it not consistent with the record, but it's also not consistent with Nevada law and the way the Speedy Trial works. So, when I asked that question about the conflict of his own making, quote, you talked about the Speedy Trial issue, but the conflict of his own making, quote, in the district court opinion is really in a passage where the court is not talking about the Speedy Trial issue, but instead is saying that Howard had refused to communicate with counsel beginning in November of 1982 from the very outset of the relationship. It's the court talking about how he was stonewalling from the beginning. Your honor, that is even more clearly erroneous, because as the district court itself acknowledged, this conflict arose at the instant that Ms. Howard, Mr. Howard met his trial attorneys, because it was at that moment that Mr. Jackson announced his relationship to the victim. So, from the very inception of their relationship, he had reason to be distrustful of counsel, and that is what he said throughout, what his attorneys said throughout. Wasn't Jackson announcing that so that he could basically address the conflict? I mean, he was telling the court, I have this conflict, and the court said, okay, you're walled off and you can't participate. I mean, why is it reasonable to him to take from that an idea that there's going to be a conflict? Well, perhaps not on that occasion. I would say a conscientious judge would ask a series of questions at that point in time, because they are being alerted to a very serious problem that is obviously, that is very foreseeably going to cause issues with the attorney-client relationship. So you could ask, what is the supervisor-trial attorney relationship? Does Mr. Jackson have a say in how trial attorneys are compensated? Does he have a say in who's fired and who's promoted? Those are all things that any defendant would want to know when they're assessing what kind of incentives his counsel are going to have to litigate this case zealously. But more significantly, the trial judge had far more reason to inquire a month later, on December 30th, when Mr. Howard filed a motion to substitute. That's the point at which, under this Court's cases, there is clearly a duty imposed on the trial court to make inquiries. And all those questions should have been asked about Mr. Jackson. He should have been asked, or someone should have been asked, does Mr. Jackson know the victim socially in addition to professionally? Does he know the victim's family, because family members were significant witnesses? All those questions should have been asked about Mr. Gibson as well, and not a single question was ever asked. So that is the absence of an inquiry altogether. Just to very briefly address the speedy trial point, I would only emphasize that the trial court did suspend the speedy trial act here. It did extend the schedule beyond the 60-day timeline that the trial court understood the act required. So it's really a red herring. There was an unreasonable request for a speedy trial, and it was denied as it's denied routinely in courts around the country. And that does not eclipse the problem with Mr. Howard's case. We'll give you a couple of extra minutes for rebuttal if you need it, but can you address the jury instruction issue as well? And let me just frame it so we can capture the chase on this. Let's assume that we agree with you that Riley is still binding and controls as to the question whether the instruction was erroneous. But I'm stuck on the prejudice problem of the Strickland inquiry, so I'd like you to address that, Adam. Yes, Your Honor. And on prejudice, I don't know if I have much more to add other than what's in the brief, which is to stress that the prosecutor here himself, in his closing, characterized the murder in terms that are irreconcilable with deliberateness, as it has been defined by the jury. But didn't the prosecutor also focus a lot on felony murder? I'm just really struggling with how this wasn't a murder committed during a robbery, especially given that the jury eventually found that it was at the penalty phase, and it just seems like all of the facts lead that way. So if they're going to convict at all, how is this not felony murder, and that just gets rid of the problem? Well, Your Honor, I would refer the Court back to the Riley decision, where that was also an issue. Mr. Riley was also convicted of first-degree murder under a theory that included both premeditated murder and felony murder in a general verdict, like Mr. Howard was. But it seems like the facts there, if I remember, I think it was a drug theft, I guess, but it seems like the facts there were much more muddled about exactly what had happened, and it doesn't seem like the focus was on robbery the way it was here. There may be some distinctions. I would say the commonality controls, though, and the commonality is that we simply don't know what the jury did. We have a general verdict. We have two theories of murder that were presented to the jury. We have language from the prosecutor that very directly refers to a theory of murder. And so there's no case that says if it's a general verdict, then we have to, per force, find prejudice, right? We still have to determine whether there was prejudice based on the evidence and based on the theories advanced by the prosecution. There's no per se rule that supports your position, is there? That's correct, Your Honor. You still do have to conduct the traditional prejudice analysis. And here the prejudice analysis, I would submit, turns in our favor because of the prosecutor's argument at closing and because of those questions that can't be answered, which would leave the court in grave doubt is the language from Riley about whether the jury chose the premeditation theory or chose the felony murder theory. Okay. All right. Thank you. Do you have any further questions? Okay. Thank you very much. We'll make sure you have a couple minutes for rebuttal. Let's hear from the State now. I think you must be on mute. I apologize, Your Honors. I made the very mistake that Callie told us expressly not to make, and forget to unmute our microphones. Your Honors, good morning. My name is Jerry Linhart Castle from the Attorney General's Office in the State of Nevada, and I represent the respondents. To show that this court should affirm the federal court's decision, first I will show that the trial court did not violate Mr. Howard's right to counsel when it denied his untimely request for new counsel and failed to show a conflict of interest or the constructive denial of counsel at trial. Second, I will show the trial counsel was not ineffective and Howard was not prejudiced, as this court so rightly notes, because counsel failed to challenge the jury instruction on premeditation. First, Your Honors, the trial court correctly concluded that Howard's right to counsel was not violated. Because Howard fails to show an actual conflict of interest or the constructive denial of counsel. First, Howard fails to show that he was denied the right to counsel. As this court inferred during Mr. Horowitz's statements or arguments, the state court found and the district court agreed that Mr. Howard was manipulating the proceedings. Granted, the court never made a finding that there was a good relationship between Mr. Howard and his attorneys. However, there is no authority that requires an attorney to have a good relationship with his or her client. In fact, the authority states quite the opposite. That is not required. Can I ask it in this way? I mean, if the defendant, for whatever reason, has it in his mind that he can't trust the lawyers who have been assigned to him, and as a result, he's just not communicating with them in a way that allows them to zealously represent him at trial, and the lawyers come to the judge, and I think the record here reflects that they did repeatedly say, well, listen, maybe you don't think that the reason is legitimate. Maybe he should have been assured by the fact that these two lawyers were screened. But the reality is we can't communicate with him. We don't feel as though we're able to represent him in this case. I guess in those circumstances, what is the legitimate basis for the judge to say, well, I don't really care. You're just stuck with these lawyers who are not going to be able to represent you effectively, so we're going to go forward. Well, based on the state court's determination that Mr. Howard was essentially manipulating the system and that any denial of counsel was a result of his own making, the court was certainly correct in determining that those attorneys could continue on in representing Mr. Howard. In Larson v. Palmatier, this court expressly determined that no United States Supreme Court case has ever held that the Sixth Amendment is violated because a defendant is represented by a lawyer that he dislikes or that he distrusts. The state court had adequately inquired into the so-called conflict. The court noted that, yes, Mr. Jackson had stated at the initial arraignment that he had a relationship and his parents had a relationship with the victim. However, Mr. Jackson also noted that he hadn't reviewed the case. He had solely seen who the victim was. And Mr. Jackson agreed when the court told him not to supervise his case. Mr. Jackson agreed that he would not. And at the evidentiary hearing, Mr. Franzen testified that neither Mr. Jackson nor the other attorney who was biased against Mr. Howard had any involvement whatsoever in his case. Yeah, I get all that. But let's just assume, somewhat hypothetically, that our petitioner here wasn't reassured by the fact that Mr. Jackson was green from the case and wasn't going to have any involvement. And let's say that he refused to utter a single word to his public defenders from that point forward, never engaged with them in any conversation, and eventually came to the court and said, I want to counsel. I just can't trust these people given, you know, my concerns about the bias within the office. It doesn't matter, it seems to me, if the judge says, well, that's unreasonable, sir. You know, basically get over it. And the lawyers are sitting there saying, he can't get over it. I don't know why. We've tried everything in our power to assure him that we're going to be, you know, in his corner and that we're not influenced by that, but he won't talk to us. You're saying in that situation the trial judge just says, well, that's your problem. It's of your own making that you won't talk to them. And so you just have to go forward with the lawyers who are assigned to you. In that circumstance, Your Honors, there could arguably be a constructive denial of counsel. However, those are not the facts of this case. Mr. Howard himself testified at the evidentiary hearing that he spoke with his attorneys, that he tried to confer with them. The court made a factual finding that it observed Mr. Howard conversing with his attorneys discussing the case, and that the discussions appeared to be going as any attorney-client discussion would. And Mr. Howard specifically stated at the hearing, the late December hearing, that Mr. Cooper had won him over, that he liked Mr. Cooper, he believed he could go forward with Mr. Cooper, that he specifically wanted Mr. Cooper to act as lead counsel in this case and to represent him. And so that shows that Mr. Howard did not have this great distrust that he was willing to work with his attorneys. Wasn't that statement, though, that statement about wanting him to be lead counsel, I mean, it follows the court saying, I'm leaving you with these counsel, and then after he says it, they repeat again that he wants new counsel, so it's a little bit hard to say that he really was happy with his counsel. He may not have been happy with his counsel, but he never had the right to counsel with his own choosing. And the record shows that the attorneys did counsel and confer with Mr. Howard, and then Mr. Howard admits that he also conferred with his attorneys. So the evidentiary hearing, which Mr. Howard totally wants this court, not totally, but to ignore where it doesn't benefit him, is absurd, and Mr. Howard does not cite any authority which would allow this court to cherry-pick various portions of the evidentiary hearing record and the underlying record. The court specifically made a note at the evidentiary hearing that it had addressed the issue on different occasions of this alleged conflict of interest, but Mr. Howard had made no showing that there was any basis to distrust his attorneys, or that he actually did distrust his attorneys, or that his case was adversely affected by his somewhat distant relationship with his attorneys. So Daniels talks about whether there's a legitimate reason for completely losing trust. Do you have authority for the idea that we review this legitimate reason concept for clear error rather than de novo? Well, Your Honor, if this court goes, I do not have such an authority, Your Honor. However, if this court looks at the cases in the Daniels case, the Daniels case has much more grievous facts. There was another attorney who was prepared to go to trial at the time for Mr. Daniels. Mr. Daniels believed his attorney was actively pursuing a trial strategy that was against his best interests. There's no showing of any of those facts here that would give rise to such a showing by Mr. Howard. Your Honor, additionally, he failed to show that there was any adverse effect on the way counsel represented him. And in fact, Mr. Franzen testified at the evidentiary hearing that other than the fact that his team chief and the other attorneys were walled off from assisting in trial strategy, they handled the case just as they would any other case. That there was no change in their representation. Accordingly, the district court's findings that Mr. Howard had manipulated the system are not fairly erroneous. The court, Mr. Howard fails to show that. And they fail to show an objective basis for a distrust, even under pre-EDFA standards. Can I ask you, if my colleagues don't have any further questions on this issue, can I ask you about the jury instruction issue? Certainly, Your Honors. I wanted to see if there was anything else I should bring up. To the jury instruction, in order for this court to not find the trial counsel was ineffective for failing to challenge the jury instruction. First of all, counsel did not perform efficiently by failing to challenge this because the jury instruction was a correct statement of Nevada law at the time it was given. However, even if this court were to disagree, Mr. Howard must still meet the prejudice standard, which he absolutely cannot do. Mr. Howard's defense focused on the fact that he did not commit this crime. Not that the murder was not willful, premeditated, and deliberate, but that he did not commit this crime. Mr. Howard stood on the stand that he could not be so callous as to commit a murder. And his trial attorneys highlighted those portions of the trial where testimony conflicted it, where there could have possibly been a reasonable doubt. However, both the State and Mr. Howard conceded that this case primarily fell under the felony murder rule. That if the jury found that Mr. Howard was the individual who robbed the victim, then they must find that this was a first degree murder because of the felony murder rule. Consequently, the defense did not argue that the murder was not deliberate. It argued that Mr. Howard did not commit the murder, that he was not guilty under the felony murder rule because he did not commit this act. Well, can you respond then to your opponent's argument that during closing argument, the prosecutor, him or herself, I can't remember who gave the closing argument. Mr. Seaton, yes. Okay. You know, characterize the State's own theory of how the crime was committed in a way that is directly in conflict with what we, you know, what deliberation is supposed to mean. Well, Your Honor, first of all, Mr. Seaton did not, I don't believe, did characterize the murder as one that would conflict with the definition of deliberation. In fact, the evidence showed that Mr. Howard did deliberate, did deliberate. He planned out the robbery. He was deliberate with the robbery. He planned it in advance. He had stolen the badge and the radio from the Sears security guard. He was posing as a security guard when he met with Mr., with the victim and the victim's family. And they went back the next day to effectuate the robbery and what became the murder the next day. Additionally, Mr. Howard killed Mr., or the victim, execution style, while he was lying down spread eagle with his stomach on the ground of the van, on the floor of the van. Mr. Howard shot him in the back of the head. What the state argued was that the facts pointed to a deliberate act, not just one that was planned out with cool reflection. So, consequently, even assuming that the jury instruction was deliberate, something which the respondents do not concede, respondents assert that the jury instruction was a correct statement of Nevada law at the time, that under the felony murder rule, Mr. Howard could be convicted of first-degree murder, which the defense argued in its closing argument. So, regardless of any statements by the prosecution in closing, and again, the respondents do not concede that those statements were erroneous, any error was completely harmless. There is no showing of prejudice here. Well, okay. I hear you. You're saying we don't even need to deal with the deliberation part because of the felony murder theory. That was also properly before the jury. Your opponent says, well, but that was also true in Riley, and nonetheless, Riley got relief. What's your response to that argument? Well, even though Mr. Riley got relief, again, it goes back to the statement that in Riley, the facts of the robbery were not clear. There was not a clear showing that this was committed during a robbery. However, even the defense counsel admitted, as it had to, that the murder was committed during a robbery. The question was whether Mr. Howard committed that robbery and murder. Therefore, reliance on Riley is misguided based on the clarity of the facts showing that Mr. Howard intended to commit a robbery and did, in fact, commit this murder while committing the robbery. Okay. Do you have further points that you want to address? Your Honor, for the remainder, I would submit it on the briefs and just urge that this court reaffirm. Okay. Thank you very much for your argument. Let's wait two minutes on the clock, if we could, for rebuttal. Very good. Thank you, Your Honor. As far as the manipulation goes, one other point about the speedy trial rationale that the district court adopted, Mr. Howard actually addressed the supposed tension between his speedy trial rights and his Sixth Amendment rights at the time, and what he effectively said was that he didn't think it made a difference how much time his attorneys had to prepare because he didn't think they would do a good job regardless. And that might be true, it might not be true, but it's exactly what you would expect a defendant to say who was in the position of having no faith in their counsel, and that's what this court's case is requiring. In terms of this positive statement that Mr. Howard made about Mr. Cooper, I do want to emphasize that it is quite hedged and qualified. He says at the same time, I don't know, I don't understand. He has mental health issues that are apparent in that same aspect, same part of the transcript. So I would encourage the court to take that into account as well. As far as the post-conviction record goes, we have no problem with the post-conviction record. We think it supports our claim, but the state suggests that there's no authority for excluding a post-conviction record. I would point the court to the DeMora case, D-apostrophe-A-M-O-R-E, which is cited in Daniels and talks about a constructive job claim being complete at the time and sort of post hoc analysis not being appropriate. And finally, on the framework in AEDPA, the state cited Larson. That is very much an AEDPA case. It's all about what clearly established U.S. Supreme Court case law there is. We don't need that here. This is pre-AEDPA. We have very strong, numerous Ninth Circuit decisions reversing convictions for constructive denial claims under far less egregious circumstances than here where you had a capital defendant being told that the supervisor of his attorneys had a relationship to the victim and a colleague of his attorneys wanted him to be executed. And no inquiry whatsoever. Thank you, Your Honor. Okay. Thank you very much. If we can recommend the case to start, you can submit it.
judges: WATFORD, FRIEDLAND, BENNETT